IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA,           §
                                    §
                Plaintiff,          §
                                    §   Criminal No. 3:08-CR-356-D(01)
VS.                                 §
                                    §
RENE RANGEL,                        §
                                    §
                Defendant.          §

MEMORANDUM OPINION
AND ORDER

Defendant Rene Rangel ("Rangel") moves to suppress evidence
(including a firearm) obtained during a search of his residence
pursuant to a warrant, contending that the warrant is invalid under
the Fourth Amendment.   Concluding, for the reasons set forth
below,[1] that the good-faith exception applies, the court denies the
motion.

I

Pursuant to a search warrant issued on October 15, 2008,[2]
officers of the Dallas Police Department ("DPD") conducted on
October 17, 2008 a search of unit 438 (the west unit) of a duplex

_____

[1]Pursuant to Fed. R. Crim. P. 12(d), the court sets forth in
this memorandum opinion and order its essential findings.

[2]Rangel and the government both rely on October 15, 2008 as
the date the search warrant was issued.  Although the Dallas County
magistrate's handwriting is unclear and the search warrant
affidavit refers to conduct that occurred on October 16, 2008, *see*
GX 19 ¶ 5, the court will assume that the search warrant was issued
on October 15, 2008 because the parties agree on this date and the
difference of one day is immaterial to the court's reasoning and
conclusion.

located on West Page Avenue in Dallas, Texas, seeking evidence of illegal graffiti activities, paraphernalia, and related items. Rangel resided there with his brother Bryan Rangel ("Bryan").[3]  The duplex also contained a second unit (the east unit), number "436." Units 438 and 436 were not connected by any means of ingress or egress, each had its own kitchen and bathroom facilities, and each was leased to different occupants.  During the search, DPD officers discovered and seized an Olympic Arms .223 caliber rifle, model AR-15, ammunition, a rifle case, and a ballistic vest.  Rangel was later indicted for the offense of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).[4]

Rangel moves on two grounds to suppress the seizure of the evidence obtained during the search.  First, he maintains that the warrant obtained by Detective Dirks is invalid because it authorized a search of both units in the duplex, but there was no cause (much less probable cause) to support a search of unit 436. Rangel contends that when a warrant pertains to a multi-unit structure but does not specify the unit to be searched, it is invalid unless law enforcement officers have probable cause to search all units.  Second, Rangel posits that the evidence cannot

---

[3]In his motion, Rangel referred to unit 438 as the east side. D. Mot. Suppress 2.  In DX 1, however, he identified unit 438 as the west side.  This discrepancy is immaterial.

[4]The indictment also includes a forfeiture allegation under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).

- 2 -

be admitted under the good-faith exception.  He contends that Detective Dirks and the other executing officers could not have acted in objectively reasonable reliance on the search warrant because they knew in advance that the dwelling was a duplex, Detective Dirks had already been to the premises and conducted a limited search of unit 438, his knowledge affects the reasonableness of the other officers' conduct, and, even if Detective Dirks was honestly mistaken, minimal further investigation would have shown that the units were separate and distinct.

The government responds that the good-faith exception applies because the officers acted in objectively reasonable good faith reliance on a search warrant that was supported by probable cause.

                                    II

Under the Fourth Amendment, "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  The "manifest purpose of this particularity requirement was to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).  To satisfy the particularity requirement, a search warrant that pertains to a multi-unit structure must specify the unit as to which probable cause for search exists.  *See Garrison*, 480 U.S. at 85; *United States v. Hinton*, 219 F.3d 324, 325-26 (7th Cir. 1955).

                                  - 3 -

The exclusionary rule precludes the government from relying on illegally seized evidence. *United States v. Houltin*, 566 F.2d 1027, 1030 (5th Cir. 1978). The purpose of the exclusionary rule is to "deter unlawful police conduct." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2003). This purpose will not be served, and thus the rule is inapplicable, where evidence is obtained in "objectively reasonable good-faith reliance upon a search warrant." *Id.* (internal quotation marks omitted). In reviewing a search pursuant to a warrant, the court engages in a two-step inquiry. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003). First, the court determines whether the good-faith exception to the exclusionary rule applies. *Id.* (citing *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1129-30 (5th Cir. 1997)). If it does, the court "need not reach the question of probable cause for the warrant unless it presents a 'novel question of law,' resolution of which is 'necessary to guide future action by law enforcement officers and magistrates.'" *Id.* (citing *Pena-Rodriguez*, 110 F.3d at 1129-30). If the good-faith exception does not apply, the court proceeds to a determination of whether "the magistrate had a substantial basis for . . . concluding that probable cause existed." *United States v. Lampton*, 158 F.3d 251, 258 (5th Cir. 1998) (omission in original) (quoting *Pena-Rodriguez*, 110 F.3d at 1129-30).

"Under the good-faith exception, evidence obtained during the

- 4 -

execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *Payne*, 341 F.3d at 399 (citing *United States v. Leon*, 468 U.S. 897, 921-25 (1984)).  The good-faith exception cannot apply if one of four circumstances is present: "(1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid." *Id.* at 399-400 (quoting *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992) (per curiam)).

III

The court holds that the government has established that the good-faith exception applies.

A

According to the evidence developed at the suppression hearing, in approximately September 2008 DPD Detective Bradley Dirks ("Detective Dirks"), a member of the DPD Gang Unit

specializing in combating graffiti, observed and photographed multiple instances of graffiti containing the tag name "RUSH." The instant investigation began on October 12, 2008, when Detective Dirks learned that Bryan had been detained on a graffiti offense. Detective Dirks visited Bryan at unit 438 of the duplex in question. Bryan consented to Detective Dirks's entry into unit 438 and to a search of his room. During the search, Detective Dirks observed and photographed graffiti, including the tag name "RUSH." After doing additional research, Detective Dirks realized that in August 2001 he had talked to Rangel and learned that Rangel had been arrested for graffiti and that the tag name "RUSH" was involved. Based on this evidence——including past events of spray painting that he had observed——Detective Dirks decided to seek a warrant to search Rangel's residence for graffiti evidence.

In preparing the search warrant affidavit and proposed search warrant, Detective Dirks researched the City of Dallas water bill department records and Dallas County Appraisal District ("DCAD") tax records to obtain the legal description of the location to be searched. The DCAD records did not show a unit 438 but showed a unit 436. The water bill records showed that a water bill was being paid for unit 438 but not for unit 436. Despite the fact that "438" was the number that Detective Dirks had seen above the door to the unit where he had observed the graffiti during the search of Bryan's room, he included unit "436" in the search

warrant affidavit and proposed search warrant because the DCAD records did not show the existence of a unit 438. Under his normal practice, he would have included unit 438 on the search warrant application and proposed search warrant had he not checked the water and DCAD records.

Based on Detective Dirks's research and findings, he discussed both units 436 and 438 in the search warrant affidavit,[5] but he stated in ¶ 1 that, according to the Dallas County tax records, "438 W. Page Ave. does not exist." GX19 ¶ 1. Specifically, Detective Dirks averred, in pertinent part:

> Legal Description; Dallas Land & Loan # 2 BLK 65/3186 PT LTS 19 & 20, a duplex dwelling one story red brick veneer with green painted trim with the numbers 436 located over the east front door and numbers 438 located over the west front door located at 436 W. Page Ave[.], Dallas, Dallas County, Texas. Dallas County Tax Records indicate that 438 W. Page Ave. does not exist. The City of Dallas water bill department records indicate that 436 W. Page Ave. does not have anyone paying the water bill and 438 W. Page Ave. as having the water bill being paid by Morrison Management.

*Id.* He also stated:

> [i]ncluded as to the location to be searched are all rooms, attics, basements and other parts therein, any garages/car ports, storage rooms, out buildings and trash containers specifically assigned, attached, or other wise [sic] identifiable as under the control of those persons residing at 436 W. Page Ave.

---

[5]At one point, Detective Dirks referred in the typewritten portion of his affidavit to "436/438 W. Page." GX 19 ¶ 5.

- 7 -

*Id.*

On the third and fourth pages of his affidavit, in ¶ 5, he made clear, however, that the requested search pertained to unit 438. Detective Dirks referred to his earlier, limited search of unit 438 with Bryan's consent. He noted that Bryan had "stated [that] they had recently moved to 438 W. Page." *Id.* ¶ 15. He stated that Bryan had later informed him that "the individual that was at the duplex at 438 W. Page on October 12, 2008 during the consent to search was his brother Rene Rangel." *Id.* And he averred that a car registered to Rangel and Carmela Rangel was "parked beside 438 W. Page" and that "marking[s] located at the duplex 438 W. Page linked Rangel with the tag name 'RUSH.'" *Id.*

When Detective Dirks sought the search warrant, he explained the discrepancy in unit numbers to the Dallas County magistrate. The magistrate advised him that, because he was going to enter the door marked "438," he should list that unit number on the affidavit and initial it. Detective Dirks did so on his affidavit, the proposed search warrant, and the search warrant return and inventory. As a result of these handwritten changes, the search warrant affidavit that Detective Dirks signed, and the search warrant that the magistrate signed, identified the following as the location to be searched: "436*/438 BAD* W. Page Ave Dallas, Dallas County, Texas." GX 19 (italicized text written in hand). In both documents, all text except "/438 BAD" was typewritten. Detective

Dirks added "/438 BAD" by hand.   The letters "BAD" represented Detective Dirks's initials.   Detective Dirks failed, however, to make the same change to ¶ 1 of his affidavit.

Detective Dirks's intent was always to enter the side of the duplex numbered "438" and to enter the room he had been in before. He never intended to enter unit 436.   The magistrate understood that this was his intent, which is why she directed him to add the handwritten reference to unit 438.

Detective Dirks and other officers from the DPD Gang Unit executed the warrant.   Before conducting the entry and search, Detective Dirks explained to the other officers that they were to search only the unit numbered "438," where he had been before.

B

The warrant that Detective Dirks obtained authorized on its face a search of both units 438 and 436.   The warrant could have been made more particular by clearly stating that, although the record address of the duplex appeared to be "436 W. Page Ave.," there was probable cause to search only unit 438 and that this was the unit to be searched.   Nevertheless, even assuming on this basis that the search warrant lacked the necessary particularity, if the good-faith exception applies, the court must not suppress the evidence that Rangel challenges.

The controlling question is whether the search warrant was so lacking in particularity that the executing officers could not have

reasonably presumed it to be valid.  The search warrant expressly incorporated Detective Dirks's affidavit by reference, and, as discussed above, *see supra* § III(A), in discussing probable cause, the affidavit referred several times to "438 W. Page," e.g., identifying it as the location where Detective Dirks had performed his earlier, limited search.  Further, the affidavit's discussion of the discrepancy in official records as to the address of the duplex structure, including the fact that county tax records did not recognize the existence of "438 W. Page Ave.," suggested a reasonable explanation for why "436 W. Page Ave." was listed on the warrant.  And the magistrate directed that the affidavit and proposed search warrant be changed to add references to "438 W. Page Ave."  Therefore, viewed together with the expressly incorporated affidavit, the search warrant was sufficiently particular to permit the executing officers reasonably to have presumed it to be valid.  Accordingly, the government has established that the executing officers' reliance on the warrant was objectively reasonable and in good faith, and that Rangel's motion must be denied based on the good-faith exception.

Two Fifth Circuit cases provide additional support for this conclusion.  In *United States v. Harrist*, 258 Fed. Appx. 668 (5th Cir. 2007) (per curiam), the panel considered whether a warrant was sufficiently particular as to the evidence to be seized.  The warrant identified the item as a "Western Digital 20 Gig."  *Id.* at

670. This in fact designated only a hard drive, when the evidence at issue was the entire computer. The court held that the good-faith exception applied. *Id.* The court reasoned that the affidavits, which the warrant incorporated by reference, made it clear that "the judge who signed the warrant knew that the item at issue was the computer." *Id.* Further, the executing officer, who was also the affiant, "knew the computer was to be seized." *Id.*

Similarly, in *United States v. Gordon*, 901 F.2d 48 (5th Cir. 1990), the court held that the good-faith exception applied where evidence had been obtained pursuant to a search warrant that listed an incorrect address. The court reasoned that "[b]ecause [the officer] was both the affiant and the executing officer and had recently viewed the location in question, there was no possibility the wrong premises would be searched." *Id.* at 50 (internal quotation marks omitted). Further, "only the location intended to be searched" had in fact been searched. *Id.*

In the present case, as in *Gordon*, Detective Dirks was both the affiant and one of the executing officers, and he had visited the location in question shortly before the warrant was executed. Further, he informed the other executing officers that unit "438" was the one to be searched. Consequently, there was no possibility that unit 436 would be searched, and in fact it was not. Moreover, as in *Harrist*, Detective Dirks credibly testified that the magistrate who issued the warrant understood that the executing

officers would be entering unit "438" and that, for that reason, she instructed him to insert "/438" on the warrant and affidavit. Finally, the court also credits Detective Dirks's testimony that, had he not performed additional research into city and county records to confirm the legal description, he would have described the location to be searched simply as "438 W. Page Ave."

Given the purpose of the exclusionary rule, it would be unwarranted (if not paradoxical) to exclude evidence where the executing officers relied in objective good faith on a warrant issued by a magistrate, and the warrant was defective simply because the affiant, who was attempting *to satisfy* the particularity requirement but found conflicting information in the public records concerning the correct legal description of the property to be searched, attempted to follow what the records appeared to reflect.

*     *     *

Because the evidence obtained from the search of Rangel's residence is admissible under the good-faith exception to the exclusionary rule, the court denies his March 2, 2009 motion to suppress.

> **SO ORDERED.**

June 2, 2009.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 12 -